IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:13-cr-091(3) |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Denying [Second] Motion for |
| Gary F. Anderson, | : | Compassionate Release |
| | : | |
| Defendant. | : | |

This matter is before the Court on the [Second] Motion for Compassionate Release submitted by *pro se* Defendant Gary F. Anderson. (Doc. 259.) The Government has not filed a response to Anderson's Motion. Nonetheless, for the reasons stated below, the Court will **DENY** the Motion.

## I. BACKGROUND

On May 12, 2014, Defendant Gary Anderson pleaded guilty to conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin and five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(b)(l)(A)(i) and 846. (Docs. 110–112.) On January 20, 2015, the Honorable Judge Sandra S. Beckwith sentenced Anderson to a term of 151 months of imprisonment, five years of supervised release, participation in the 500-hour drug treatment program, a $2,000 fine, and a $100 special assessment. (Doc. 142.) The sentence imposed fell below the advisory guideline range of 262 to 327 months of imprisonment. (Presentence Report ("PSR") at ¶ 151.) Anderson currently is incarcerated at FCI Memphis, and his estimated date of release is September 22, 2024. Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last viewed 6/27/2023).

On January 29, 2021, Anderson filed his initial Motion for Compassionate Release.

(Doc. 251.) He argued at that time that his medical conditions put him at increased risk for severe illness if he contracted COVID-19 while incarcerated. The Court issued an Order denying him compassionate release on April 12, 2021. (Doc. 254.) The Court concluded that his medical conditions and his risk of contracting COVID-19 did not rise to the level of an extraordinary and compelling basis for his immediate release. (*Id.* at PageID 1235.) The Court also concluded that the 18 U.S.C. § 3553(a) sentencing factors weighed against his release. (*Id.* at PageID 1236–1237.)

A little more than two years later, Anderson mailed an *ex parte* letter to the Court which was filed as a [Second] Motion for Compassionate Release. (Doc. 259.) He asserts two bases for his release, neither of which is related to his personal health or COVID-19. First, he asks the Court to give him earned-time credits under the First Step Act that the Bureau of Prisons denied to him. (*Id.* at PageID 1245–1246.) Second, he seeks release from prison to "be there with [his] family" because his grandfather is in hospice care and his father has stage two prostate cancer. (*Id.* at PageID 1246.)

## II. STANDARD OF LAW

The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–749 (6th Cir. 2008). A defendant seeking sentence reduction bears the burden of proving entitlement to compassionate release. *Id.* at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020). Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative

> rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

Exhaustion of administrative remedies is a mandatory claim-processing rule. *United States v. Alam*, 960 F.3d 831, 833–834 (6th Cir. 2020). This claim-processing rule "serves important interests" including that "prison administrators can prioritize the most urgent claims" and "investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist." *Id.* at 835. Any compassionate release motion filed less than 30 days after the warden receives a compassionate release request must be denied without prejudice. *Id.* at 836.

Assuming the inmate has exhausted administrative remedies, the district court must (1) determine whether "extraordinary and compelling reasons" warrant a reduction and (2) weigh the relevant sentencing factors listed in § 3553(a). *United States v. Jones*, 980 F.3d 1098, 1101, 1108 (6th Cir. 2020).[1] "Congress did not define what constitutes an 'extraordinary and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting 28 U.S.C. § 994(t)), *cert. denied*, 142 S. Ct. 2771 (2022). Courts

---

[1] The Sixth Circuit determined in *Jones* that the only U.S. Sentencing Commission Policy Statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—is inapplicable to cases filed by federal inmates. 980 F.3d at 1109, 1111. Therefore, the district court has full discretion to define "extraordinary and compelling reasons" without reference to the policy statement in § 1B1.13. *Id.* at 1111; *United States v. Elias*, 984 F.3d 516, 519–520 (6th Cir. 2021).

generally have discretion to define what constitutes "extraordinary and compelling" reasons. *Id.* Nonetheless, the Sixth Circuit recognizes two restrictions on that discretion:

> First, non-retroactive changes in the law, whether alone or in combination with other personal factors, are not "extraordinary and compelling reasons" for a sentence reduction. Second, facts that existed when the defendant was sentenced cannot later be construed as "extraordinary and compelling" justifications for a sentence reduction.

*Id.* at 562; *see also United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (*en banc*) (resolving intra-Circuit split on the non-retroactive changes in law issue). More generally, the Sixth Circuit has emphasized that extraordinary and compelling reasons must be "unusual, rare, and forceful" as opposed to "ordinary and routine." *McCall*, 56 F.4th at 1055.

The § 3553(a) factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553(a).

## III. ANALYSIS

Before examining Anderson's arguments in favor of compassionate release, the Court must point out that he has not asserted or proven that he exhausted administrative remedies as to this Motion. The failure to exhaust administrative remedies denies the warden the first opportunity to consider the merits of Anderson's new arguments about earned-time credits and the health of his family members. "Successive compassionate release motions must independently satisfy the exhaustion requirement." *United States v. Binney*, No. 12-CR-272, 2023 WL 1929947, at *2 (N.D. Ohio Feb. 10, 2023) (citation omitted); *see also United States v. MacLloyd*, No. 21-1834, 2022 WL 18144100, at *2 (6th Cir. Aug. 2, 2022) (denying renewed

motion for failure to exhaust to the extent inmate presented substantively different grounds for release to the court than he had presented to the warden). The Court must deny Anderson's [Second] Motion for Compassionate Release on this basis.

In addition, Anderson's substantive arguments fail on the merits. Anderson first suggests that the Court should grant him 365 days of earned-time credits pursuant to the First Step Act because he took "vocational programs [and] parenting programs." (Doc. 259 at PageID 1245.) The First Step Act authorizes eligible inmates to receive time credits towards prerelease custody or supervised release for the completion of evidence-based recidivism reduction programs or productive activities. 18 U.S.C. § 3632(d)(4).[2] The credits cannot be applied, however, unless the inmate has achieved a low or minimum risk of recidivism pursuant to the Bureau of Prisons calculation. 18 U.S.C. § 3624(g)(1); *see also Shipman v. Cox*, No. 4:22-cv-00001, 2022 WL 1239063, at *2–3 (N.D. Ohio Apr. 27, 2022) (finding that an inmate is not eligible to receive earned-time credits under the First Step Act unless he has a minimum or low risk of recidivism). Anderson admits that he has been calculated as a medium recidivism risk, precluding his entitlement to the earned-time credits. (Doc. 259 at PageID 1246.) Moreover, the authority to award credits under the First Step Act lies with the Bureau of Prisons. *Shurelds v. Zouhary*, No. 3:22 CV 01199, 2023 WL 2413789, at *1 (N.D. Ohio Feb. 17, 2023) ("The responsibility for computing sentences and applying sentencing credits lies with the Bureau of Prisons (BOP)."). An inmate cannot seek relief from the Courts without exhausting administrative remedies. *Id.* In sum, the Court cannot award Anderson 365 days of earned-time credits under the First Step Act, and the Court does not find this argument to be an extraordinary and compelling reason to grant him compassionate release.

---

[2] Anderson has not submitted evidence that he took vocational programs or parenting programs which would qualify for credits under the First Step Act, but the Court assumes that his assertion is true for the purposes of the analysis.

Anderson's second argument fares no better. He requests compassionate release to be with his grandfather, who is in hospice, and his father, who is batting prostate cancer. (Doc. 259 at PageID 1246.) While the Court is sympathetic, an inmate's incarceration frequently creates an unfair hardship on their extended family members, and such circumstances without more are not extraordinary. *See United States v. Villasenor*, No. 21-3477, 2021 WL 5356032, at *1 (6th Cir. Nov. 17, 2021) (stating that the need to provide care to a dependent mother is not extraordinary); *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio June 16, 2019) (holding that an inmate with no other relative to care for his sick and aging parents is not extraordinary).

To bolster his argument, Anderson asks the Court to consider amendments to the United States Sentencing Guidelines ("U.S.S.G.") that that will become effective on November 1, 2023 absent contrary Congressional action. The amendment to U.S.S.G. § 1B1.13 would broaden the policy statement to provide that extraordinary and compelling circumstances exist in the circumstances of either "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" or the incapacitation of another immediate family member or person "similar in kind" to an immediate family when the defendant is the only available caregiver. United States Sentencing Commission, Federal Register Notice: Submission of the 2023 Amendments to Congress, https://www.ussc.gov/policymaking/federal-register-notices/federal-register-notice-submission-2023-amendments-congress. These proposed amendments do not change the Court's analysis. Primarily, the proposed amendments have not taken effect. Also, Anderson has not asserted or proven that he is the only available caregiver for his grandfather or father.

Finally, even if the Court found that extraordinary and compelling circumstances existed,

the Court concluded in the April 12, 2021 Order that the § 3553(a) sentencing factors weigh against a reduction of Anderson's sentence. (Doc. 254 at PageID 1236–1237.) That analysis has not changed in significant respect. As to the nature and characteristics of the offense, Anderson was an organizer and leader of a drug trafficking conspiracy to distribute heroin and cocaine that spanned from June 2011 to August 2013. (PSR at ¶ 45.) Anderson was also in possession of guns in furtherance of the drug trafficking conspiracy and maintained stash houses where he stored drugs and drug proceeds. (*Id.*) In short, the crime for which Anderson pleaded guilty was a very serious and sophisticated offense.

The Court is also concerned by Anderson's extensive criminal history. (PSR at ¶¶ 67–120.) Anderson has been involved with the criminal justice system since the age of 14 and has been incarcerated on several occasions. His prior offenses include but are not limited to drug trafficking, domestic violence, violation of court order, use of a weapon while intoxicated, possession of drugs, having weapons under disability, obstructing official business, and driving under suspension. (*Id.*) His pattern of criminal behavior concerns the Court that he would be likely to commit future crimes and remain a risk to the public.

ln addition, release is also inappropriate given Defendant's disciplinary history while incarcerated, which includes engaging in disruptive conduct, giving/accepting money without authorization, fighting, phone abuse, martial arts, and refusing to obey orders. (Doc. 253-4 at PageID 1227–1229.) Anderson asserts that he has not had an infraction in four years, but he does not provide evidence to prove that assertion. Even if true, his change in behavior, while admirable, does not outweigh the factors weighing against release.

Lastly, the Court is concerned that reducing Anderson's sentence would lead to sentencing disparities. Anderson was sentenced below the guideline range recommended by the

Probation Officer. He has approximately one year left to serve on his sentence. Reducing his sentence further would undermine the original sentence, diminish the seriousness of his conduct, and hamper the effort to deter criminal conduct.

## IV. CONCLUSION

For all of these reasons, Anderson's [Second] Motion for Compassionate Release (Doc. 259) is **DENIED**.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge